DOMENGEAUX, Judge.
Plaintiff-appellant, C. I. T. Financial Services Corporation, brought this action for enforcement of guaranty agreements allegedly in effect between itself and the defendants-'appellees, C. L. Robinson, George Murray, and Murray’s Mobile Homes. From a judgment dismissing its suit plaintiff has appealed.
The pertinent facts are as follows:
C. L. Robinson and George Murray are partners in an enterprise known as Murray’s Mobile Homes, located in Vidalia, Concordia Parish, Louisiana. C. I. T. Financial Services Corporation is a large lending institution which also deals in commercial paper, with a branch office located in Baton Rouge, Louisiana. Treasure Mobile Homes is a mobile home dealership situated in Hammond, Tangipahoa Parish, Louisiana, and is operated by Don Miller and Dick Everett.
*502 In late 1973 Murray’s Mobile Homes entered into an agreement with C. I. T. whereby the latter would provide certain types of financing for its (Murray’s) business operations and would also purchase certain installment sales contracts. The typical language in that portion of the installment contracts dealing with assignment indicates that the contracts were sold to C.' I. T. without recourse except as otherwise provided between the parties. Before C. I. T. purchased any contracts from Murray’s it required both Mr. Murray and Mr. Robinson to execute personal guaranty agreements relating to future sales of commercial paper. Murray’s Mobile Homes further entered into a contract entitled “Dealer Underlying Agreement” whereby the partnership agreed to repurchase any mobile home on which the original purchaser defaulted and also agreed to make whole C. I. T. for the outstanding balance on any note. The first paragraph of the “Dealer Underlying Agreement” contains the following language :
“1. This Agreement states the terms on which we shall sell and you shall buy contracts evidencing our time sales of new and used mobile homes . . .” (Emphasis added)
C. L. Robinson testified that he met with a representative of C. I. T., Russ King, in Baton Rouge, who offered him the following proposition. King wished to do business with Treasure Mobile Homes but was hampered by the fact that one of Treasure’s partners had prior adverse dealings with C. I. T. According to Robinson, King' requested that Murray’s Mobile Homes “run some of Treasure’s paper through”. He assured Robinson that neither Murray’s Mobile Homes nor its partners would assume any liability whatsoever on the paper. Robinson told King that he would discuss it with his partner, George Murray.
Murray was initially apprehensive, as he knew neither Don Miller nor Dick Everett of Treasure Mobile Homes and did not wish to incur any liability on installment sales contracts executed by another dealership. However, he was assured by Robinson that “by running Treasure’s paper through” they were performing an act merely for the convenience of C. I. T. This representation was made by Robinson to Murray in the presence of King and Dick Everett. At that time, King did not personally concur in Robinson’s assessment of potential liability, but neither did he deny Robinson’s statements. Murray and Robinson testified that they only agreed to act as “sellers” of Treasure’s mobile homes to ingratiate themselves with C. I. T.
King testified that he did not tell Robinson that Murray’s Mobile Homes would not incur liability on the paper, but he did not deny the fact that Robinson made the abovementioned statement to Murray in his presence and that he failed to challenge their interpretation of the agreement.
Apparently the trial judge accepted the factual version presented by Murray and Robinson and we find an adequate basis in the record to support his determination.
Thereafter, George Murray and C. L. Robinson signed all necessary papers, apparently in blank, to indicate that they were the sellers of a particular mobile home to Johnny and Cheryl Harrison. The chattel mortgage shows that the day of the sale was December 20, 1973, and that the seller and mortgagee is Murray’s Mobile Homes of Vidalia, Louisiana. The installment sales contract was assigned by Murray and Robinson to C. I. T. for the amount of $10,582.00. The chattel mortgage was signed in Tangipahoa Parish, where Treasure Mobile Homes is located. The purchaser of the mobile home, Cheryl Harrison, testified that the home was purchased at the Treasure Mobile Homes dealership in Hammond, Louisiana, and that she never met or talked to either Murray or Robinson *503 (nor did she ever hear of Murray’s Mobile Homes) until some time later.
The check given by C. I. T. in consideration for the installment sales contract listed Murray’s Mobile Homes as the payee. However, the check was never delivered to Murray’s, but rather Dick Everett (of Treasure Mobile Homes) personally received the check at C. I. T.’s office in Baton Rouge. The check was endorsed “Murray’s Mobile Homes” and later “For Deposit, Treasure Mobile Homes, Don Miller”. Murray and Robinson never saw the check, nor did they ever receive any compensation whatsoever regarding the above transaction. Sometime in early 1974 Mrs. Harrison called C. I. T. complaining that she had been promised that a washer and dryer would be installed in her trailer. She was told to call George Murray who informed her that she could purchase the needed appliances at a store in Baton Rouge and charge them to his account. Murray testified that he performed this act at the request of C. I. T. who informed him that he would be reimbursed. Once again Murray testified that he was merely trying to accommodate and enhance his relationship with C. I. T.
The Harrisons defaulted on payment of the installment sales contract owned by C. I. T., and the latter then sought to enforce the personal guaranty agreements and dealer underlying agreement against Murray’s Mobile Homes and its two partners.
The issue presented by this litigation is simply this: Are Murray’s Mobile Homes, George Murray, and C. L. Robinson, obligated, under the general agreements executed between them and C. I. T., to guarantee this particular installment sales contract sold to the latter?
We think not.
In our opinion there are several individual contracts involved in this transaction. First, there was the initial sale of the mobile home by Murray’s (Treasure) to the Harrisons. Secondly, there was the sale of the installment sales contract by Murray’s (Treasure) to C. I. T. Finally, there is the alleged contract between Murray’s (and its partners) applying the personal guarantees and dealer underlying agreement to the transaction in question. Obviously, it is this third and final contract with which we are concerned.
Civil Code Article 1779 sets forth the four requisites for contractual validity:
“Art. 1779. Four requisites are necessary to the validity of a contract:
1. Parties légally capable of contracting.
2. Their consent legally given.
3. A certain object, which forms the matter of agreement.
4. A lawful purpose.”
With regard to the second requisite for the validity of a contract, consent, Civil Code Article 1819 provides:
“Art. 1819. Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by—
Error;
Fraud;
Violence;
Threats.”
While it is generally true that parol evidence is inadmissible to vary or modify the terms of a written agreement, the jurisprudential rule is well established that when misrepresentation is alleged such *504 evidence may be considered. Defendants herein specifically pleaded the issue of misrepresentation, and thus we are free, as was the trial judge, to consider the parol evidence adduced at trial in making a determination of the validity of the contract in question.
We find that the evidence supports defendant’s contention that they never intended to apply the general personal guarantees and dealer underlying agreement to this particular sale. The dealer underlying agreement itself, as abovementioned, indicates that its applicability is limited to sales actually made by Murray’s. Since Murray’s did not, in fact, sell the mobile home in question, nor did they receive any payment therefor, said portion of the dealer underlying agreement is consistent with their position of non-liability on the installment sales contract. While the dealer assignment agreement relative to this particular transaction contained language to the effect that the assignment of the installment sales contract to C. I. T. would be governed by other agreements executed by the parties (dealer underlying agreement and personal guarantees) we are of the opinion that the inclusion of such language in the contract was made upon C. I. T.’s oral representation that the defendants would incur no liability whatsoever on the contract.
Thus, we find that any consent on the defendant’s part concerning the application of the personal guarantees and dealer underlying agreement to this particular sale was vitiated by the misrepresentation made by C. I. T.’s agent as to effect of the language in the dealer assignment portion of the installment sales contract. Hence, consent lacking, the dealer underlying agreement and personal guarantee agreements must, of necessity, be inapplicable to the instant sale.
For the above and foregoing reasons the judgment of the district court is affirmed in all respects. Costs of this appeal shall be assessed against the plaintiff-appellant.

AFFIRMED.

GUIDRY, J., dissents and assigns written reasons.